## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACOB WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| VERSO CORPORATION, RANDY J. | ) | **THE FEDERAL SECURITIES LAWS** |
| NEBEL, JEFFREY E. KIRT, ROBERT K. | ) | |
| BECKLER, MARVIN COOPER, and | ) | |
| NANCY M. TAYLOR, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jacob Wheeler ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this action against Verso Corporation ("Verso" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which BillerudKorsnäs AB ("BillerudKorsnäs") will acquire the Company through BillerudKorsnäs' subsidiaries, BillerudKorsnäs Inc. ("Parent") and West Acquisition Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2.      On December 19, 2021, Verso announced its entry into an Agreement and Plan of Merger dated the same day (the "Merger Agreement").  That agreement provides Verso stockholders

---

[1] Non-party BillerudKorsnäs provides packaging materials and solutions that challenge conventional packaging for a sustainable future.  BillerudKorsnäs is a world leading provider of primary fiber-based packaging materials and has customers in over 100 countries.  BillerudKorsnäs has seven production units in Sweden and Finland, and approximately 4,400 employees in 20 countries.

will receive $27.00 in cash for each share of Company common stock they own (the "Merger Consideration").

3.      On February 8, 2021, Verso filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Verso stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are

found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a stockholder of Verso.

10.     Defendant Verso is a Delaware corporation with its principal executive offices located at 8540 Gander Creek Drive, Miamisburg, Ohio 45342. Verso's shares trade on the New York Stock Exchange under the ticker symbol "VRS."

11.     Defendant Randy J. Nebel ("Nebel") has served as President and Chief Executive Officer ("CEO") of the Company since January 27, 2021, and a director since November 14, 2019. Defendant Nebel previously served as Interim President and CEO of the Company from October 2020 to January 2021.

12.     Defendant Jeffrey E. Kirt is Chairman of the Board and has served as a director of the Company since January 31, 2020.

13.     Defendant Robert K. Beckler has served as a director of the Company since January 31, 2020.

14.     Defendant Marvin Cooper has served as a director of the Company since February 6, 2020.

15.     Defendant Nancy M. Taylor has served as a director of the Company since November 14, 2019.

16.     Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

17.     On December 19, 2021, Verso announced in relevant part:

MIAMISBURG, Ohio, Dec. 19, 2021 – Verso Corporation (NYSE: VRS) ("Verso") today announced that it has entered into a definitive merger agreement under which

BillerudKorsnäs AB ("BillerudKorsnäs") will acquire all of the outstanding shares of Verso for a purchase price of $27 per share in cash, or approximately $825 million. Verso's Board of Directors, acting upon the recommendation of a special committee of Verso's Board, has unanimously approved and resolved to recommend approval of the merger by Verso's shareholders. The transaction is expected to close in the second quarter of 2022.

The consideration corresponds to a premium of approximately 35% compared to closing price of Verso's shares on December 17, 2021; a premium of approximately 26% compared to Verso's volume-weighted average share price during the last 30 trading days; and a premium of approximately 57% compared to the unaffected closing price of Verso's shares on July 9, 2021, the day prior to Atlas Holdings' submission of an unsolicited, non-binding proposal to acquire Verso for $20.00 per share in cash.

The acquisition of Verso is fully in line with BillerudKorsnäs' strategy to drive profitable growth in paperboard, and the ambition to expand into North America. BillerudKorsnäs aims to build one of the most cost-efficient and sustainable paperboard platforms in North America by converting several of Verso's assets into paperboard machines while maintaining Verso's position as a quality and cost leader in specialty and coated freesheet paper.

In making this acquisition, BillerudKorsnäs recognizes that Verso's strategic assets are positioned in a region with abundant and cost-effective fiber supply suitable for production of premium packaging materials. Verso's location also presents favorable export opportunities to both Asia and Europe. Verso will become the platform for BillerudKorsnäs' future expansion in North America and is expected to provide continuous growth opportunities over the next ten years and beyond. The combined company will be one of the largest providers of virgin fiber paper and packaging with a cost and quality advantage.

Randy Nebel, President and Chief Executive Officer of Verso, said, "With the support of our talented team, Verso has successfully streamlined our operations and reduced costs while strategically investing in projects to enhance our ability to support our customers. This transaction builds upon our considerable progress and better positions the combined company to invest in our North American manufacturing capability, provide high-quality paper products to customers and accelerate growth."

Mr. Nebel continued, "This agreement follows careful consideration and negotiation led by the special committee of our Board which was formed following receipt of the unsolicited proposal earlier this year. Our full Board believes this transaction maximizes value for shareholders, who will receive a significant premium and immediate and certain value. In BillerudKorsnäs, we found a partner that shares our commitments to safety, quality, sustainability and innovation and is uniquely positioned to recognize the value of our business. We are grateful for BillerudKorsnäs' partnership over the past several months in reaching this compelling transaction, particularly amidst an uncertain and restrictive pandemic-related travel environment. We are excited to join forces with BillerudKorsnäs and benefit from enhanced opportunities as part of a larger, stronger organization."

Christoph Michalski, President and CEO of BillerudKorsnäs, commented, "The combination of BillerudKorsnäs' expertise in high-quality virgin fiber packaging materials and Verso's attractive assets creates an excellent platform for long-term profitable growth. We will obtain cost-effective production of coated virgin fiber material in the Midwestern United States. We also plan to sequentially transform part of the business into paperboard production while continuing to serve the U.S. customers. Our investments will create new U.S.-based jobs in a growing market and accelerate the transition from plastic-based packaging materials to renewable sources."

**Investing in Verso's Platform**

BillerudKorsnäs plans to convert Verso's largest facility, its Escanaba Mill, into a world-class, sustainable, fully integrated paperboard production site. One machine is estimated to be converted by 2025, a second machine by 2029, with a total capacity of around 1,200,000 tons (1,100 ktonnes). BillerudKorsnäs estimates that the investment for the conversion project will be up to approximately $1 billion.

In addition to continued paper production in Escanaba during the conversion, BillerudKorsnäs plans to continue operating the Quinnesec Mill, a cost and quality leader in graphic paper, specifically in coated freesheet and specialty papers. The mill has the capacity to produce about 430,000 tons (400 ktonnes) of graphic and specialty papers and 240,000 tons (200 ktonnes) of market pulp per year.

BillerudKorsnäs is committed to continuing to serve Verso's existing customers.

**Additional Transaction Details**

The acquisition will be effected pursuant to a definitive merger agreement under which Verso will merge with a wholly-owned subsidiary of BillerudKorsnäs. The acquisition will be primarily financed by BillerudKorsnäs through increased debt and operating cash flow. Closing of the transaction is not subject to any financing condition.

A special meeting of Verso's shareholders is expected to be convened following the mailing to Verso's shareholders of a proxy statement for the transaction. The transaction is expected to close during the second quarter of 2022, subject to the approval of Verso's shareholders, as well as receipt of regulatory approvals and satisfaction of other customary closing conditions. Regulatory approvals include U.S. antitrust approval as well as approval from relevant state and federal energy regulatory authorities in the U.S.

**Advisors**

Rothschild & Co serves as exclusive financial advisor and Kirkland & Ellis LLP serves as legal counsel to Verso. BofA Securities serves as exclusive financial advisor, Skadden, Arps, Slate, Meagher & Flom LLP serves as U.S. legal counsel and Cederquist serves as Swedish legal counsel to BillerudKorsnäs.

**The Proxy Statement Contains Material Misstatements or Omissions**

18.    Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Verso's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

19.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections and the valuation analyses underlying the fairness opinion provided by the Company's financial advisor, Rothschild & Co US Inc. ("Rothschild"); and (b) Rothschild's potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Forecasts and the Financial Analyses Relied on by the Board*

20.    The Proxy Statement omits material information regarding the financial forecasts for the Company, including the unlevered after-tax free cash flows ("UFCFs") used by Rothschild for its Discounted Cash Flow Analysis ("DCF"), as well as all line items used to calculate Verso's UFCFs.[2]

21.    The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Rothschild.

22.    The Proxy Statement describes the Rothschild fairness opinion and the various underlying valuation analyses.  Those descriptions, however, omits key inputs and assumptions

---

[2] *See* Proxy at 45, stating that in performing its DCF, Rothschild utilized the "unlevered, after-tax free cash flows, including pension cash contributions, that Verso was forecasted to generate for the three months ended December 31, 2021 through the end of fiscal year 2026 based on the December Forecasts provided by the management of Verso."  Moreover, "[e]stimated unlevered, after-tax free cash flows for the terminal period were based on the December Forecasts provided by the management of Verso, and calculated as net operating profit after taxes, plus depreciation and amortization, less increases in net working capital, less capital expenditures, less pension income, less other accounting adjustments." *Id.*  As a result, the Proxy Statement also fails to disclose all line items underlying Adjusted EBITDA, Operating Cash Flow,  Total Cash Flow, for both the "August Forecasts" and the "December Forecasts."

forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding Rothschild's work.  As a result, Verso stockholders cannot assess what significance to place on Rothschild's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

23.     With respect to the *Selected Public Company Analysis* performed by Rothschild, the Proxy Statement fails to disclose: (a) Verso's estimated pro forma Adj. EBITDAP for 2022E and 2023E; and (b) the individual multiples and financial metrics for each of the companies analyzed.

24.     With respect to Rothschild's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the transactions analyzed.

25.     With respect to the *DCF* performed by Rothschild, the Proxy fails to disclose: (a) the UFCFs Verso was forecasted to generate for the three months ended December 31, 2021 through the end of fiscal year 2026; (b) the terminal year UFCF used in the analysis; (c) the terminal values for the Company; (iv) the individual inputs and assumptions underlying the discount rates ranging from 12.25% to 15.25%; (v) the Company's net debt as of September 30, 2021; and (vi) the fully diluted outstanding shares of Verso's common stock.

26.     With respect to Rothschild's review of implied present values of the future price per share of Verso's common stock, the Proxy fails to disclose: (a) estimated 2026E pro forma Adj. EBITDAP; (b) estimated net tax effected pension liability and net debt as of 2025E; (c) the number of fully diluted outstanding shares of Verso's common stock; and (d) the discount rate used in the analysis and the inputs and assumptions underlying the discount rate.

27.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Financial Forecasts" and "Opinion of Rothschild & Co US Inc."

*Material Omissions Concerning Rothschild's Potential Conflicts of Interest*

28.     The Proxy fails to disclose material information concerning potential conflicts of interest faced by Rothschild.

29.     The Proxy fails to disclose whether Rothschild has performed any services for Verso in the two years prior to rendering its fairness opinion and, if so, the details of the services provided and any compensation received for the services provided.

30.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

31.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of Rothschild & Co US Inc."  Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Verso stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

33.     Plaintiff repeats all previous allegations as if set forth in full.

34.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Rothschild.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

39.     Plaintiff repeats all previous allegations as if set forth in full.

40.     The Individual Defendants acted as controlling persons of Verso within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or

directors of Verso, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Verso's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Verso, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Verso stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  March 2, 2022

**LONG LAW, LLC**

By   */s/ Brian D. Long*
_____
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*